*JAMES M. ALSTON, plaintiff in error, *vs.* J. W. WHEATLEY & COMPANY *et al.,* defendants in error.

(McCAY, Judge, did not preside in this case, on account of relationship to one of the parties.)

A defendant in a mortgage *fi. fa.,* issued on a foreclosure of a mortgage on personal property, who desires to contest the amount due on the grounds that there is usury in the debt, and that he is entitled to have the claim reduced or decreed to be satisfied and paid, from the fact that he had leased to his creditors, (plaintiffs in *fi. fa.*) a plantation to be cultivated by them for one year in farmer-like style, and they were to apply the net proceeds thereof to the payment of said debt, and that by reason of their gross mismanagement a small crop was made, and he thereby damaged to an amount greater than his debt, has a complete remedy in the provisions of sections 3899 and 3900 of the Revised Code, and he cannot resort to a Court of equity, for an injunction to prevent a levy or for the appointment of a receiver to take charge of the plantation, etc., and for relief on account of said grounds of defense, unless for special reasons shown, such as the insolvency, non-residence, etc., of his creditors. No such facts are alleged in this case.

Injunction. Receiver. Before Judge CLARK. Sumter Superior Court. October Term, 1872.

James M. Alston filed his bill against J. W. Wheatley & Company, and W. W. Stovall, containing substantially the following allegations:

That on February 8th, 1870, he executed to Wheatley &

---

*Judge TRIPPE commenced his judicial duties with this case, having been appointed to fill the vacancy created by the expiration of the term of Judge MONTGOMERY.

Company, a mortgage to secure the payment of $4,335 90, upon the crop of corn, cotton and produce, to be grown upon his plantation during that year; also, upon lots of land, numbers one hundred and fifty-seven and one' hundred and fifty-eight in the seventeenth district of Sumter county, and also upon twenty-five head of stock; that said original indebtedness was renewed, and three notes taken, due, respectively, September 15th, October 15th, and November 15th, 1871, making in the aggregate, with two per cent. added thereon, the sum of $5,450 54, from which said Wheatley & Company deducted the sum of $1,416 04, for cotton turned over to them, the balance remaining, with usurious interest added, made the amount hereinafter referred to; that on March 11th, 1872, as additional security to the mortgage above set forth, complainant leased to Wheatley & Company what is known as his "lower place," in said county, containing two thousand acres, more or less, for the term of one year, from January 1st, 1872, and conveyed to them all the cotton seed, farming utensils and thirteen head of stock on the place; that it was stipulated in said agreement that after the payment of the necessary expenses incurred by said Wheatley & Company in making a crop, and the sum of $4,129 40, to themselves, said lease and conveyance should cease and determine, and that if the net proceeds of said farm be more than sufficient to pay the aforesaid amount, the surplus was to be turned over to complainant.  Complainant charges that the amount last stated is incorrect, and is largely more than his legal indebtedness to them, because of large sums of usury embraced therein.  That it was stipulated in said agreement that Wheatley & Company were to cultivate said farm in a prudent, farmer-like manner; that the interest to be paid on the sum claimed by them should be ten per cent. per annum.  Complainant charges that said farm has been badly mismanaged, the corn and cotton neglected, and only about one-half such a crop made on said plantation as might and would have been made by proper management as contemplated by said agreement; that the defendant, W. W. Stovall, who was the over-

seer employed by Wheatley & Company, frequently absented himself from the plantation, coming nearly every week to the city of Americus, stopping a hand and mule from work to carry him to the railroad, leaving the farm unprotected and uncared for; that said place with proper management would have produced a crop large enough to have paid complainant's indebtedness to Wheatley & Company, and to have left to him a surplus; but he has been largely and most ruinously damaged by the negligent management of the same; that the crop of cotton made on said place was about eighty bales, when by good management one hundred and thirty bales might have been made. Complainant charges that still further to secure the payment of the amount alleged to be due them, said Wheatley & Company prevailed on him to give them an order on his brother, John M. Alston, for the same, in case the first mortgage and the second lease and conveyance failed to pay them. That the said Wheatley & Company are now selling what cotton was made on said place at ruinous prices, which, if they were to retain until later in the season, would greatly appreciate; that their improper management has already damaged complainant $6,000 00. That if the aforesaid mortgage on the stock be foreclosed, complainant will be unable to give the necessary bond for the forthcoming of the property, at the expiration of the litigation that will arise thereon, and the absence of said stock from his place will entirely ruin him; that his brother, John M. Alston, has accepted the aforesaid order drawn on him, and unless restrained by the order of this Court, complainant fears that he will turn over cotton in payment thereof; that by an actual examination of the accounts current of Wheatley & Company, complainant has discovered that they have charged him the sum of $1,500 00, usurious interest, for the years 1869, 1870 and 1871, and to March 11th, 1872, and that on that day his actual indebtedness to them was not over $2,629 00. Complainant waives discovery and prays as follows: That an account be taken of the actual damage complainant has sustained by the failure of the defendants to carry out the contract of March 11th, 1872; of the

Alston *vs.* Wheatley & Company *et al.*

amount of usurious interest charged to him; of the amount
he had advanced to the hands before March 11th, 1872; of
the value of the fodder transferred to the hands, and of the
amount of cotton and other produce raised and carried off
from the plantation; that these amounts when added together
may be placed to complainant's credit; that an actual calcula-
tion be had of his indebtedness to defendants on the 11th day
of March, 1872, and the amount of advances made to run the
place for the year 1872; that these sums be placed to the
credit of Wheatley & Company; that the last sum be deduct-
ed from the first, and a decree be rendered in favor of com-
plainant for the balance; that all securities held by Wheatley
& Company, as against complainant be decreed to be delivered
up and canceled; that Wheatley & Company be enjoined
from prosecuting any suits at law or in equity on either of the
aforesaid papers against complainant; also, from selling any
cotton or any produce raised on said plantation; also, from
having anything to do with said premises; also, from demand-
ing and receiving from John M. Alston, any cotton on said
order. Complainant further prays the Court to appoint some
fit and proper person as receiver, to take charge of the cotton
and other produce already gathered, and to gather and to take
charge of the balance of the crop, and to hold it until the
further order of the Court. That the writ of subpœna may
issue.

The answer of the defendants, and the affidavits which were
submitted upon the argument of the motion for injunction,
are unnecessary to an understanding of the decision of the
Court, and are therefore omitted.

The Chancellor refused the injunction, and declined to ap-
point a receiver, to which rulings complainant excepted, and
now assigns them as error.

Lyon & Irvin; G. W. Warmick; C. T. Goode, for plain-
tiff in error.

W. A. Hawkins; Elam & Hawks, for defendants.

Seabrook *et al.* *vs.* Brady.

TRIPPE, Judge.

We see no reason, in this case, why the aid of a Court of equity should be invoked. The defense as to the usury is a plain, legal defense, which a mortgagor can make under the sections 3899 and 3900 of the Revised Code. Nor is there any greater reason why the complainant should resort to equity to avail himself of his defense, as to the damages he alleges he has sustained by the mismanagement complained of. His claim for these is good at law, and can be set up under the contract of lease, as a payment or partial payment, to the extent that the facts would show the damages to be. By the contract for the lease the creditors were to cultivate the plantation in a "farmer-like style," and to apply the net proceeds to the payment of the debt. If they had made $1,000 00 of profits, the debt would be paid to that amount. If the profits had been as much as the debt, the whole debt would be paid. If by mismanagement, and in violation of the contract, they did not make the $1,000 00 or enough to discharge their claim, when they could have so done by proper management, the debtor can set up such failure so as to have his debt credited or discharged in full, according to the facts. This could be done under the same provisions of the Code, which would allow the defense of usury.

Judgment affirmed.